UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-486-GWU

JOHNATHAN HONEYCUTT, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

06-486 Honeycutt

        Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

    Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

06-486 Honeycutt

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

06-486 Honeycutt

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Johnathan Honeycutt,[1] was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a back disorder, an affective/mood disorder, and a learning disorder.  (Tr. 13).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Honeycutt retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 14-17).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether the plaintiff, a 27 year-old man with an eighth grade education and unskilled work experience, could perform any jobs if he were limited to "light" level exertion, with a fourth grade reading ability, and had a "limited but satisfactory" ability to relate to coworkers,

---

[1] The plaintiff's name is spelled "Johnathan" on the complaint, although documents in the transcript suggest the correct spelling is "Jonathan."  (E.g., Tr. 91, 121).

7

06-486 Honeycutt

interact with supervisors, deal with work stresses, and understand and remember one- or two-step instructions; the ALJ also specified that the jobs be "low stress." (Tr. 286). The VE responded that there were jobs as a material handler and laundry worker, with a total of 2,100 jobs in the state of Kentucky and 108,000 jobs nationally. (Id.). If the hypothetical question were modified to include a "severely limited but not precluded" ability to relate to coworkers, interact with supervisors, and deal with work stresses, the VE's testimony was that the individual "should still be able to do the jobs that I listed previously," but "may have trouble in the long run . . . maintaining employment." (Tr. 287). When asked to explain, the VE described the limitations in dealing with coworkers, supervisors, and work stresses as being "pretty significant areas of function in the workplace," and "over the long haul, a person may eventually not be able to hold their job if they are limited in dealing with all of these." (Tr. 288).

      On appeal, this court must determine whether the administrative decision is supported by substantial evidence. There is an additional issue in that the plaintiff's Date Last Insured (DLI) for purposes of his DIB application was December 31, 1999, meaning that he was required to show disability existing before that date, and after the date of a previous denial decision on September 22, 1999, in order to be entitled to benefits. Since there is no evidence concerning the plaintiff's condition during this

short period of time, the portion of the administrative decision finding that he was not entitled to DIB will be affirmed.

Regarding the plaintiff's SSI application, he alleged disability due to nervousness, lack of education, poor concentration, stomach problems, and back pain. (Tr. 58).

Counsel for the plaintiff argues on appeal that the ALJ did not include proper hypothetical factors cited by psychological examiners and reviewers.

Dr. Chintamani Vora, a psychiatrist, examined the plaintiff in February, 2005 and diagnosed an anxiety disorder, a borderline IQ, and borderline personality traits, with a Global Assessment of Functioning (GAF) score of 45-50. (Tr. 145). A GAF in this range reflects a "serious" impairment. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34. Mr. James Leisenring, a psychologist who examined Mr. Honeycutt for the state agency in June, 2005, conducted some objective testing which resulted in a full scale IQ of 70 and a fourth grade reading ability. (Tr. 149-50). He diagnosed a dysthymic disorder, an anxiety disorder, cannabis dependence in full sustained remission, and mild mental retardation to borderline intellectual functioning. (Tr. 149-50). Mr. Leisenring assigned a GAF of 50, and stated that depression and anxiety could cause Mr. Honeycutt to be "significantly compromised" in reference to his ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. (Tr.

9

150-1). He would also have a moderately impaired ability to understand, remember, and carry out instructions.

At this point, a state agency psychologist, Dr. Ann Demaree, reviewed the evidence and completed a mental residual functional capacity assessment listing numerous "moderate" limitations, including the plaintiff's ability to understand, remember, and carry out detailed instructions, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal work day and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. (Tr. 160-1). Dr. Demaree's "elaborations on the preceding capacities" at the end of the report states that "on balance, [Leisenring's] report and his [activities of daily living] suggest that he has little motivation to work," but the plaintiff would be able to complete simple, repetitive tasks. He could not relate to the public but could work in an isolated work setting, and could adapt to work that was routine, "not pressured or public where there was not rapid change." (Tr. 162).

06-486 Honeycutt

Finally, Mr. Honeycutt was evaluated by Dr. Shahzad Shahmalak, a psychiatrist, on January 24, 2006. Dr. Shahmalak also diagnosed an anxiety disorder and assigned a GAF of 51-60. (Tr. 211-12). This would be consistent with a "moderate" impairment per the DSM-IV-TR.

The only examining source to give specific restrictions beyond the GAF was Mr. Leisenring, but, as previously described, when a hypothetical question reflecting a seriously compromised ability to respond appropriately to supervision, coworkers, and work pressures was given to the VE, her testimony was that such a person might not be able to sustain employment. (Tr. 287-8). The ALJ's ultimate functional capacity finding (Tr. 14) which assumed that Mr. Honeycutt would have a "limited but satisfactory ability" in the same areas does not even reflect the narrative portion of Dr. Demaree's conclusions, which prohibited all public contact and specified an "isolated work setting." (Tr. 162). Moreover, even if the subsequent report of Dr. Shahmalak could be said to be more generally consistent with "moderate" rather than "serious" mental limitations based on the GAF, Dr. Demaree had cited a large number of other "moderate" limitations which were not given to the VE, either. (Tr. 161). Therefore, the plaintiff's assertion that the hypothetical mental factors were not supported by substantial evidence is correct. A remand will be required for either additional vocational testimony or further review of the plaintiff's mental status and functional capacity.

06-486  Honeycutt

The plaintiff also raises an issue regarding the physical restrictions.  The only examining source to give an opinion was apparently Pinkish Patel, a source at the Kentucky Orthopedic and Chiropractic Center, who diagnosed chronic low back pain with radicular symptoms, based in part on an MRI of the lumbosacral spine showing degenerative disc disease at L5-S1 with left disc protrusion and nerve root impingement. (Tr. 147, 239).  He limited the plaintiff to less than sedentary exertion and less than full-time standing and walking, in addition to a number of other non-exertional restrictions.  (Tr. 239-40).  There were also office notes apparently covering treatment from approximately November, 2006 to March 29, 2006.  (Tr. 245-59).  These restrictions, if binding, would establish disability.  As the defendant notes, however, Dr. Patel appears to be a chiropractor since his signature contains the letters "D.C."  (Tr. 239, 243).[2]  A chiropractor is not considered an "acceptable medical source" under 20 C.F.R Section 416.913(d).  This section of the regulations does classify chiropractors as one of the "other sources" from whom information can be used to provide information about a claimant's limitations, however.  Social Security Ruling 06-03p, issued shortly after the ALJ's decision in the present case, provides that opinions from "non-medical sources" who have seen the individual in a professional capacity should be evaluated using several factors, including the length and frequency of the relationship, the consistency of the opinion with other

---

[2]The ALJ simply referred to the source as "Dr."  (Tr. 15-16).

12

06-486 Honeycutt

evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. On remand, these new guidelines should be kept in mind, particularly since no other examining source expressed an opinion regarding the plaintiff's physical capacity, and because no reviewing source had access to the entire record. (Tr. 198-206).

The decision will be remanded for further consideration of the SSI claim.

This the 31st day of July, 2007.

Signed By:

<u>G. Wix Unthank</u> 

**United States Senior Judge**